UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**STEVEN JOSEPH RODNEY**          **CIVIL ACTION NO. 22-0960**

**SECTION P**

**VS.**

**JUDGE TERRY A. DOUGHTY**

**WARDEN DEVILLE, ET AL.**          **MAG. JUDGE KAYLA D. MCCLUSKY**

## REPORT AND RECOMMENDATION

Plaintiff Steven Joseph Rodney, a prisoner at Riverbend Detention Center proceeding pro se and in forma pauperis, filed this proceeding on approximately April 8, 2022, under 42 U.S.C. § 1983. He names the following defendants in their individual and official capacities: Lieutenant Geiss, Chaplain Doyle, Warden Deville, Sergeant Barber, Deputy Bowman, Captain Hughes, Major Farmer, Captain Murray, and LaSalle Management.[1]

For reasons that follow, the Court should retain Plaintiff's First Amendment claim—that he was denied a kosher diet—and requests for punitive damages against Lieutenant Geiss, Captain Hughes, Captain Murray, Sergeant Barber, Deputy Bowman, and Major Farmer in their individual capacities. The Court should dismiss Plaintiff's remaining claims and requests for relief.

## Background

Plaintiff, who is Jewish, claims that officials at Madison Parish Correctional Center ("MPCC") failed to give him kosher food from approximately March 2020 to March 2022. [doc. #s 1, 11]. When he arrived at MPCC in March 2020, he "informed the intake staff that because

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

of [his] religious faith (Jewish), [he] required a particular diet (kosher) and therefore could not consume the one offered." [doc. # 1, p. 3]. The next day, a nurse informed Plaintiff that he "would have to be moved to another prison" to obtain kosher food because "there was no alternative diet at the facility." *Id.*

On March 6, 2020, Plaintiff informed Chaplain Doyle of his "issue." *Id.* at 6. Doyle "sat in silence[,]" gave Plaintiff "'well wishes[,]'" and provided inmate request forms and an administrative remedy procedure ("ARP") form. *Id.* Plaintiff "departed" when he discerned that "nothing would be done[.]" *Id.*

Plaintiff alleges that by the third day of his incarceration at MPCC, the food was "so disagreeable to [him] that [he] stopped eating altogether." *Id.* He submitted request forms, "pleading to speak with" Major Farmer. *Id.* Plaintiff also had "impromptu conferences with whichever officers came through the door." *Id.* He "bombarded anyone [he] thought could help[.]" *Id.*

From approximately March 10-13, 2020, following his plea for "'just some bread if you can[,]'" Plaintiff received trays each containing twenty-two pieces of cornbread. *Id.* at 6-7. The cornbread was "agreeable" to him. *Id.* at 7. But he realized he would receive cornbread indefinitely, so he refused cornbread the following day and "resolved to submit" an ARP form. *Id.*

Plaintiff claims that on March 12, 2020, Lieutenant Geiss, who was "overseeing food service that day[,]" refused to acknowledge his request for an alternative diet, refused to "call for a higher-ranking officer[,]" and "raised his hands as if to apply force . . . ." *Id.* Geiss allegedly made a spectacle of Plaintiff's meal requests by yelling, "Where's the Jew!?" at mealtime and by "displaying the trays filled with cornbread or corn itself and calling [the trays] 'kosher meals.'"

[doc. # 11, p. 1]. "All of the Styrofoam trays [Plaintiff] received had 'The Jew' written on them with a smiley face." *Id.*

Plaintiff states that the "designated response time for [his] submitted grievances" elapsed on April 7, 2020, but he did not obtain relief. [doc. # 1, p. 7]. He "prepared a civil suit." *Id.* He mentions that in April 2020, "all movement ceased" for more than one year because of the coronavirus. *Id.* He writes: "[T]he interests of the Jewish Community were not of first importance. I ate what was available to survive." *Id.* at 8.

In January 2022, Plaintiff "familiarize[d] the new staff with [his] dietary needs" and reminded "the senior employees of the transfer talks that took place prior to the pandemic." *Id.* He states, however, that "the attitude is the same as before." *Id.*

On January 5, 2022, Plaintiff "reminded" Captain Hughes of "the pre-Covid sentiment[,]" and Hughes responded: "'yeah man, they need to ship you. Talk with Farmer, he can make it happen[.]'" *Id.* Lieutenant Murray was with Captain Hughes. Plaintiff "immediately wrote another request to Major Farmer." *Id.*

On January 8, 2022, after failing to receive a reply to his request to speak with Major Farmer, Plaintiff informed Captain Hughes, Lieutenant Barber, and Sergeant Taylor of his need for a kosher diet.[2] *Id.* They disregarded his request. *Id.* He "submitted a grievance that night." *Id.*

On January 9, 2022, Plaintiff spoke with Lieutenant Geiss "about the offered meal" and his lack of a response to Plaintiff's complaints about kosher meals. *Id.* at 9. Plaintiff claims that Geiss sarcastically responded: "Whatever. Pray on it." *Id.*

---

[2] Plaintiff does not name Sergeant Taylor as a defendant.

Plaintiff alleges that by February 7, 2022, "it was clear to" Lieutenant Geiss, Deputy Bowman, Sergeant Thornton, Deputy Frost, Marshall, Faulkner, and Moore that he was not eating.[3] *Id.*

Plaintiff claims that Sergeant Barber and Deputy Bowman, who are "in charge of the meal distribution on their respective shifts[,]" refused to "investigate what constitutes a kosher meal . . . ." [doc. # 11, p. 1]. Plaintiff gave both defendants literature on the subject. *Id.* He alleges that despite knowing he was not consuming the proffered meals, both defendants "stated on many occasions that no higher ranking officers were available to speak with and that if [he] did not choose to eat what they provided [he] could starve." *Id.*

On February 8, 2022, Plaintiff "handed Sgt. Thornton an ARP . . . ." [doc. # 1, p. 9]. "That afternoon, Deputy Moore, who is said to be over Food Service, concurred that there was nothing he could offer in the way of kosher diets." *Id.* Moore agreed with Thornton that Plaintiff "needed to be transferred," but "he had no authority to effectuate" a transfer. *Id.*

On February 12, 2022, Plaintiff "again refused the meal(s) and made sure Officer Bowman (the presiding deputy) was aware of [Plaintiff's] actions." *Id.* Plaintiff asked someone if he could speak to a higher-ranking official, and he "was told that a Captain Smith would be notified and brought down for discussion." *Id.* "[T]his never materialized." *Id.* Plaintiff claims that "Officer Bowman did however bring [him] into the hall to investigate whether [Plaintiff] knew 'what it meant to be Jewish.'" *Id.*

On February 13, 2022, Deputy Bowman stated, *inter alia*: "Forget your special diet. Forget you!" *Id.* at 10. Plaintiff "refused the tray and walked off." *Id.*

---

[3] Plaintiff does not name Sergeant Thornton, Deputy Frost, Marshall, Faulkner, or Moore as defendants.

Plaintiff states that "every day since[,]" he did not receive a proper balanced meal. *Id.* He writes: "It is up to me to fend for myself. I cannot financially sustain provisions for three square meals and have lost considerable weight." *Id.*

On February 24, 2022, Plaintiff "informed [Major Farmer] of the situation yet again." *Id.* Farmer again "agreed that something should be done." *Id.* Plaintiff alleges that "nothing changes." Officials never responded to his request forms, grievances, or ARP forms. *Id.*

Plaintiff alleges that "the Captains"[4] and Major Farmer often threatened to place him in solitary confinement if he "persisted in [his] entreaties." [doc. # 11, p. 1]. When they did listen to him, they would "iterate[] and reiterate[] that [he] needed to be transferred to a more accommodating facility." *Id.* One defendant would often "just deflect [Plaintiff's] requests to the other absent individual, saying that [the absent individual] was in charge of transfers." *Id.* at 1-2. Plaintiff describes his exchanges a "merry-go-round."

In an amended pleading, Plaintiff claims that Chaplain Doyle denied his requests to "implement a small service (very similar to the kind the Muslim community enjoys sporadically) on any day of the week of [Doyle's] choosing." *Id.*

Plaintiff alleges that Lieutenant Geiss consistently "mocked the need for all those desiring to study Judaism to meet in a group setting . . . ." *Id.*

Plaintiff alleges that "no religious materials could be ordered due to . . . a ban on all books for quite some time." *Id.* "An innumerable amount of request forms, grievances, and ARP forms were given to them directly yet none were responded to in any capacity." *Id.*

Plaintiff claims that Warden Deville did not respond to appeals via request forms or the grievance process. *Id.*

---

[4] Presumably, Plaintiff refers to Captains Hughes and Murray.

5

Plaintiff seeks relief from LaSalle Management, maintaining that it employed defendants. *Id.*

Plaintiff concludes: with the exception of Warden Deville, "all of the defendants have stated at one time or another that 'Madison Parish Correctional and LaSalle Management do not provide special diets.'" *Id.*

Plaintiff was transferred from MPCC to a different facility on March 4, 2022. *Id.*

Plaintiff seeks punitive damages and an injunction instructing MPCC officials to address his dietary needs. [doc. # 1, p. 4].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[5] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is

---

[5] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

"based on an indisputably meritless legal theory." *Id.* at 327.  Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless.  *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Plausibility does not equate to possibility or probability; it lies somewhere in between.  *Id.*  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.*  A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely.  *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true.  *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).  However, the same presumption does not extend to legal conclusions.  *Iqbal, supra*.  A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id.*  "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010).  Courts are "not free to speculate that the plaintiff 'might' be able to state

a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Injunctive Relief**

Plaintiff seeks to enjoin defendants at MPCC to address his dietary needs. [doc. # 1, p. 4]. Plaintiff was, however, transferred from MPCC to a different facility on March 4, 2022. [doc. # 11, p. 2].

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969); *Rocky v. King*, 900 F.2d 864, 867 (5th Cir. 1990). Litigants "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (internal quotation and citation omitted).

"This case-or-controversy requirement persists through all stages of federal judicial proceedings." *Dierlam v. Trump*, 977 F.3d 471, 476 (5th Cir. 2020). "If an intervening event renders the court unable to grant the litigant any effectual relief whatever, the case is moot." *Id.* "A claim for declaratory and injunctive relief based on conditions of confinement is rendered moot upon the prisoner's release or transfer from the facility." *Smith v. City of Tupelo, Mississippi*, 281 F. App'x 279, 282 (5th Cir. 2008).

Mootness is jurisdictional and must be raised sua sponte. *Bailey v. Southerland*, 821 F.2d 277, 278 (5th Cir. 1987).

Here, because Plaintiff is no longer incarcerated at MPCC, his request for injunctive relief is moot.[6] *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (determining that an inmate's transfer to a different unit rendered claims for declaratory and injunctive relief moot); *Lee v. Richland Par. Det. Ctr.*, 483 F. App'x 904 (5th Cir. 2012) (affirming that a detainee's request for injunctive relief was moot because the detainee was no longer housed at the detention center). The Court should therefore dismiss Plaintiff's request for injunctive relief.

**3. Punitive Damages**

Plaintiff's only remaining request for relief is punitive damages. [doc. # 1, p. 4]. "[P]unitive damages may be awarded only when the defendant's conduct is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights. The latter standard requires recklessness in its subjective form, i.e. a subjective consciousness of a

---

[6] Plaintiff does not allege or suggest, and the record does not reveal, that there is a reasonable, demonstrable probability that he will return to MPCC. *See Hardwick v. Brinson*, 523 F.2d 798, 800 (5th Cir. 1975); *Murphy v. Hunt*, 455 U.S. 478, 482 (1982).

risk of injury or illegality and a criminal indifference to civil obligations." *Williams v. Kaufman Cty.*, 352 F.3d 994, 1015 (5th Cir. 2003) (internal quotation marks and quoted sources omitted).

Here, Plaintiff alleges that he informed Chaplain Doyle of his "issue." [doc. # 1, p. 6]. Doyle "sat in silence[,]" gave Plaintiff "'well wishes[,]'" and provided inmate request forms and an ARP form. *Id.* Plaintiff "departed" when he discerned that "nothing would be done[.]" *Id.* In an amended pleading, Plaintiff conclusorily claims that Doyle denied his requests to "implement a small service (very similar to the kind the Muslim community enjoys sporadically) on any day of the week of [Doyle's] choosing." [doc. # 11, p. 1].

Even liberally construed in Plaintiff's favor, these allegations do not plausibly suggest that Doyle was 'motivated by evil intent,' demonstrated reckless or callous indifference, or displayed a criminal indifference to civil obligations.[7, 8]

Next, Plaintiff seeks relief from LaSalle Management, maintaining that it employed defendants. [doc. # 11, p. 2]. This Court, however, previously held that LaSalle, a private prison

---

[7] *See Johnson v. Texas Bd. of Crim. Just.*, 2008 WL 5069357, at *1 (5th Cir. Dec. 2, 2008) (affirming, where the plaintiff alleged that defendants violated his right to practice his religion by limiting storage space for religious property, the grant of a motion to dismiss a prisoner-plaintiff's request for punitive damages because the plaintiff failed "to allege facts" showing that "defendants' actions, which implemented prison policies, were motivated by evil intent or that the defendants acted with reckless indifference to [the plaintiff's] constitutional rights."); *see also Busick v. Neal*, 380 F. App'x 392, 398 (5th Cir. 2010) (opining, where a prisoner-plaintiff alleged that defendants violated his right to religious freedom by limiting his access to free bibles, that the plaintiff could not recover punitive damages because he did not present evidence that defendants' actions were callous or motivated by evil intent).

[8] Plaintiff's laconic claim against Doyle concerning the lack of a "small service" is also too conclusory to state a plausible claim. *See Coleman v. Lincoln Par. Det. Ctr.*, 858 F.3d 307, 309 (5th Cir. 2017) ("As for Coleman's claim that his right to exercise his religion freely under the First Amendment was violated because he was not allowed to attend Jumu'ah prayer services, he has failed to allege any details regarding the circumstances of the denial of Jumu'ah prayer services (e.g., the regulation or policy) that would allow a court to evaluate his claim besides the bare allegation that he was not able to attend.").

10

management company, "cannot be cast for punitive damages." *Moore v. LaSalle Corr., Inc*, 429 F. Supp. 3d 285 (W.D. La. 2019) (Doughty, J.).

Ultimately, because Plaintiff does not seek any other cognizable relief, the Court should dismiss his claims against Chaplain Doyle and LaSalle Management.

**4. First Amendment**

Construing Plaintiff's allegations liberally and in his favor, the Court should retain Plaintiff's First Amendment claim—that he was denied a kosher diet—and requests for punitive damages against Lieutenant Geiss,[9] Captain Hughes,[10] Captain Murray,[11] Sergeant Barber,[12] Deputy Bowman,[13] and Major Farmer.[14,15]

The undersigned is cognizant of the Fifth Circuit's statement that "prisons need not respond to particularized religious dietary requests to comply with the First Amendment." *Baranowski v. Hart*, 486 F.3d 112, 122 (5th Cir. 2007). The court in *Baranowski*, however, did not establish a categorical bar on First Amendment claims concerning particularized religious dietary requests. *Baranowski* analyzed the *Turner* factors, and it cited *Kahey v. Jones*, 836 F.2d

---

[9] [doc. #s 1, pp. 7, 9, 10; 11, p. 1].

[10] [doc. #s 1, p. 8; 11, p. 1].

[11] *Id.*

[12] [doc. #s 1, pp. 8, 10; 11, p. 1].

[13] [doc. #s 1, pp. 9, 10; 11, p. 1].

[14] [doc. #s 1, p. 11; 11, p. 1].

[15] *See, e.g., Higgins v. Navarrete*, 2022 WL 543018, at *4 (5th Cir. Feb. 23, 2022) ("An evidenced desire for revenge may well qualify as evil intent and, at least in the context of voting for a harsher custody classification, raises a genuine issue as to whether defendants acted with reckless or callous indifference . . . .").

948, 950 (5th Cir. 1988), which also considered the *Turner* factors. *Turner* requires courts to analyze the governmental interest a defendant "put[s] forward" to justify the defendant's actions. *Turner v. Safley*, 482 U.S. 78, 89 (1987). In other words, a court may not (absent some other impediment) by rote dismiss claims that a state actor did not respond to religious dietary requests *before* the court obtains and analyzes the defendant's governmental interest.

The undersigned is also aware of a potential statute of limitations concern, considering that some defendants allegedly acted (or failed to act) as early as March 2020. However, at this early stage of the proceeding, it is plausible (1) that Plaintiff's claims were tolled while he pursued his administrative remedies[16] and (2) that because of the continuing-violation doctrine, Plaintiff's claims accrued when he was transferred. *See Rushing v. Yazoo Cnty. by & through Bd. of Supervisors of Yazoo Cnty.*, 861 F. App'x 544, 553 (5th Cir. 2021).[17] It is not clear from the face of Plaintiff's pleadings that his claims are untimely. *See Boswell*, 629 Fed. App'x at 583.[18]

---

[16] *See Bargher v. White*, 928 F.3d 439, 445 (5th Cir. 2019), *as revised* (July 2, 2019).

[17] *See Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 740 (5th Cir. 2017), as revised (Mar. 13, 2017); *Jackson v. Galan*, 868 F.2d 165, 168 (5th Cir. 1989) (applying the continuing-violation doctrine to Section 1983 claims); *Boswell v. Claiborne Parish Det. Ctr.*, 629 Fed. Appx. 580, 583 (5th Cir. 2015) (state inmate's § 1983 claim regarding denial of medical attention for hernia during his confinement as a pretrial detainee was not barred by the statute of limitations, given his allegation that this was a continuing violation); *Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009) (finding that the continuing violation doctrine "can apply when a prisoner challenges a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs"); *Hearn v. McCraw*, 856 F. App'x 493, 496 (5th Cir. 2021).

[18] *See Coomer v. Roth*, 2022 WL 73045, at *1 (5th Cir. Jan. 7, 2022) ("[T]he district court failed to give effect to the factual allegations in Coomer's pleadings showing that there were arguable bases to find: (1) his cause of action accrued . . . when his typewriter was confiscated; (2) he was entitled to equitable tolling of the limitations period while administrative proceedings were pending; and (3) the original complaint could have been placed into the prison mail system as early as June 16, 2018. Because it was not clear from the face of the operative

**5. Conclusory Claim and Conspiracy Claim**

Plaintiff alleges that "no religious materials could be ordered due to . . . a ban on all books for quite some time." [doc. # 11, p. 2]. Plaintiff does not, however, identify a responsible defendant. Accordingly, the Court should dismiss this ostensible claim. *See Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 421 (5th Cir. 2017) (dismissing a claim that supervisory officials failed to correctly house the plaintiff because despite the magistrate judge's instruction to "state what each defendant did[,]" the plaintiff did not identify a responsible defendant).[19]

Plaintiff states in his amended pleading that each defendant is "collectively responsible for the hindrance of any and all religious (Jewish) activities." [doc. # 11, p. 1]. To reiterate, however, a court "disregards bare assertions of collective responsibility, unsupported by concrete factual allegations." *Martinez*, 846 F. App'x at 243.

To the extent Plaintiff is suggesting a conspiracy, he "must show that there was an agreement among the alleged co-conspirators to deprive him of his constitutional rights and that such an alleged deprivation actually occurred." *Montgomery v. Walton*, 759 F. App'x 312, 314 (5th Cir. 2019). "Charges as to such conspiracies must be based on substantial and affirmative

---

pleadings that Coomer's suit was time barred, the district court erred . . . . Coomer should be given an opportunity to develop the facts regarding the timeliness of his claims.") (internal citations omitted).

[19] *See also Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 243 (5th Cir. 2021) ("The court disregards bare assertions of collective responsibility, unsupported by concrete factual allegations."); *Jones v. Hosemann*, 812 F. App'x 235, 238-39 (5th Cir. 2020) ("It is not enough for a plaintiff to simply allege that something unconstitutional happened to him. The plaintiff must plead that each defendant individually engaged in actions that caused the unconstitutional harm.").

13

allegations, and no mere gossamer web of conclusion or inference . . . trifles light as air . . . will suffice[.]" *Crummer Co. v. Du Pont*, 223 F.2d 238, 245 (5th Cir. 1955).

Plaintiff does not allege that defendants agreed to commit an illegal act. His threadbare allegation of "collective responsibility" is not enough: "[c]onclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983." *See Montgomery*, 759 F. App'x at 314. The Court should deny this ostensible claim because Plaintiff fails to plead an essential element of a conspiracy.

**6. Warden Deville**

Plaintiff claims that Warden Deville did not respond to appeals via request forms or the grievance process. [doc. # 11, p. 2].

A prisoner does "not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices . . . ." *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir. 2015); *see Alexander v. Texas Dep't of Criminal Justice*, 2020 WL 826452, at *2 (5th Cir. Feb. 20, 2020) (affirming dismissal of a claim that grievances were mishandled or improperly denied because "prisoners have no due process rights in the inmate grievance process.").

In *Sandin v. Conner*, 515 U.S. 472, 475 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. *See Taylor v. Cockrell*, 92 Fed. App'x. 77, 78 (5th Cir. 2004) (holding that "claims that the defendants violated his constitutional rights by failing to investigate his grievances fall short of establishing a federal constitutional claim."); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) ("[The plaintiff] does not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction. . . . [A]ny alleged due process violation arising from the alleged failure to

14

investigate his grievances is indisputably meritless."). Here, accordingly, the Court should dismiss Plaintiff's only claim against Warden Deville.

### 7. Official Capacity Claims

The Court should dismiss Plaintiff's official capacity claims. To explain, the undersigned recommends (above) dismissing LaSalle Management, which is defendants' alleged employer, and Plaintiff's official capacity claims against the defendants employed by LaSalle Management duplicate his claim against LaSalle Management. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent[.]" *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *see Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) ("The district court was also correct in dismissing the allegations against all of the municipal officers and two of the employees of the Corps of Engineers in their official capacities, as these allegations duplicate claims against the respective governmental entities themselves.").

Further, while Plaintiff does impliedly describe a policy of not offering kosher meals at MPCC, he does not allege that any named defendant made this policy. If a defendant is not a policymaker, the defendant is "not the proper defendant for an official capacity claim . . . ." *Truvia v. Julien*, 187 F. App'x 346, 350 (5th Cir. 2006) ("An assistant district attorney, therefore, is not a policymaker and not the proper defendant for an official capacity claim against the District Attorney's Office."); *see Kelley v. City of Wake Vill., Texas*, 264 F. App'x 437, 442 (5th Cir. 2008) ("Because no evidence has been presented that Officer Crawford was, at any time relevant to this proceeding, a policymaker in the WVPD, we affirm the district court's dismissal of the claim against him in his official capacity.").

To be sure, "the specific identity of the policymaker is a legal question that need not be pled . . . " *Groden v. City of Dallas, Texas*, 826 F.3d 280, 284 (5th Cir. 2016). However, the undersigned does not recommend dismissing Plaintiff's official capacity claims *because* Plaintiff fails to plead the identify of a policymaker; rather, the undersigned recommends dismissal because Plaintiff does not allege or even suggest that any named defendant made policy.

What is more, the Fifth Circuit has indicated that if a plaintiff does not identify the policymaker, the plaintiff must name the entity for which policy was made. After ruling that the specific identity of the policymaker need not be pled, the *Groden* court noted, "The plaintiff, of course, will name the *entity* that acted under the policy (here, the city of Dallas) as a defendant. *This level of identification is fundamental*." *Id.* at n.4 (second emphasis added). Here, Plaintiff states that he is "not sure" if LaSalle Management employs defendants and that he seeks relief from "the person or entity (whomever that may be)" for his official capacity claims. [doc. # 12, p. 1]. To the extent defendants were agents for an entity other than LaSalle Management, Plaintiff does not name that entity as a defendant.

To be certain, "local governments may themselves be made liable to the plaintiffs even when they are not formally parties in the suit, as long as the suits are made against the officials in their official capacities, and as long as the public entities received adequate notice and an opportunity to respond." *Barrett v. Thomas*, 809 F.2d 1151, 1155 (5th Cir. 1987). As above, though, Plaintiff's suit is not "made" against a 'proper defendant for an official capacity claim.'

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Steven Joseph Rodney's requests for injunctive relief be **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that the following claims be **DISMISSED** as

frivolous and for failure to state claims on which relief may be granted: (1) Plaintiff's claim that he was unable to order religious materials; (2) Plaintiff's claims against LaSalle Management, Warden Deville, and Chaplain Doyle; (3) Plaintiff's official capacity claims; and (4) Plaintiff's conspiracy claim.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 22nd day of June, 2022.

                                                Kayla Dye McClusky
                                                United States Magistrate Judge